## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

COMEKIA THOMAS, ET AL.                    CIV. ACTION NO. 3:22-06174

VERSUS                                                JUDGE TERRY A. DOUGHTY

SHERIFF GARY GILLEY, ET AL.        MAG. JUDGE KAYLA D. MCCLUSKY

### <u>REPORT AND RECOMMENDATION</u>

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss Plaintiffs' federal law claims for failure to state a claim upon which relief can be granted [doc. # 17] filed by Defendants, Sheriff Gary Gilley, in his individual and official capacities, and Warden Joel Weatherly, in his individual capacity. The motion is opposed. For reasons detailed below, it is recommended that the motion be GRANTED, and that Plaintiffs' remaining state law claims be REMANDED to state court.

### <u>Background</u>

On November 28, 2022, Plaintiffs Comekia Thomas and Shequila Thomas (collectively, the "Thomases") filed the instant wrongful death and survival action, individually, and on behalf of the Estate of Larry Bernard Richardson,[1] in the Fifth Judicial District for the Parish of Richland, State of Louisiana. (Petition). The Thomases alleged that, while housed at the Richland[2] Parish Detention Center ("RPDC"), in the custody of Sheriff Gary Gilley (also

---

[1] It is questionable whether the Thomases may bring suit in a representative capacity on behalf of Richardson's Estate. *See Kitchens v. Ford Motor Co.*, Civ. Action No. 13-2446, 2014 WL 130337 (W.D. La. Jan. 14, 2014).

[2] Plaintiffs incorrectly refer to the facility as "Richard" Parish Detention Center. [doc. #16, p. 1]. There is no Richard Parish; it is Richland Parish. As noted, *infra,* it appears that Plaintiffs

sometimes referred to in the Petition as "Gary Gillery") and Warden Joel Weatherly, their father, Larry Bernard Richardson (hereinafter, "Richardson"), was denied adequate medical care for his well-documented health issues, including diabetes mellitus and hypoglycemia, which ultimately led to his tragic and premature death on December 30, 2021. *Id*.

The Thomases sued the following Defendants: Sheriff Gary Gilley, in his individual and official capacities (hereinafter, "Sheriff Gilley" or "Gilley"); Warden Joel Weatherly, in his individual capacity (hereinafter, "Warden Weatherly" or "Weatherly"); J. Does, #1-25, who are registered healthcare providers employed at the RPDC; and J. Does, #26-51, who are employees or agents of Sheriff Gilley, Warden Weatherly, and/or the Louisiana Department of Public Safety and Corrections.

On December 12, 2022, Defendants, Gilley and Weatherly, removed this matter to federal court pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 1441. (Notice of Removal).

On January 12, 2023, Gilley and Weatherly filed an initial motion to dismiss the Thomases' claims against them for failure to state a claim upon which relief can be granted. [doc. # 7]. On February 2, 2023, the Thomases filed their opposition. (Pl. Opp. Memo. [doc. # 11]).

On June 29, 2023, the Thomases filed their First Amended and Restated Complaint for Survival Action and Wrongful Death ("FARC"), which did not adopt or incorporate by reference the earlier pleading, and, thus, became the operative pleading in the case.[3] [doc. # 16].

---

confused the name of the medical center, Richardson Medical Center, with the name of the detention center, Richland Parish Detention Center.

[3] An "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the

Consequently, the court denied, as moot, Gilley and Weatherly's original motion to dismiss. (June 29, 2023 E-Order [doc. # 15]).

On July 6, 2023, Gilley and Weatherly filed their second motion to dismiss for failure to state a claim upon which relief can be granted. [doc. # 17]. This time, however, the motion seeks dismissal of the Thomases' federal law claims only and suggests remand of the remaining state law claims.

On August 4, 2023, the Thomases filed their opposition to the second motion to dismiss. (Pls. Opp. Brief [doc. # 19]). Gilley and Weatherly filed their reply brief on August 10, 2023. (Defs.' Reply [doc. # 25]). Accordingly, the matter is ripe.

<u>**Standard of Review**</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)).  .

*Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra.* Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*

## The Thomases' Allegations

On an unspecified date, Richardson was transferred from the Caddo Parish Jail to the RPDC. (FARC, ¶ 21). His transfer records did not reflect a diabetes diagnosis. *Id.* However,

"prison records" included a recommendation for Richardson to be transferred to Hunt Correctional Facility where he could receive proper medical attention. *Id.* Sheriff Gilley and Warden Weatherly were "intimately aware" of Richardson's medical condition prior to his death. *Id.*

A few days after his arrival at the RPDC, Richardson Medical Center[4] ("RMC"), the medical provider utilized by the RPDC, documented that Richardson suffered from chronic diabetes and hypoglycemia. *Id.*, ¶ 22. However, RMC failed to provide Richardson with adequate medical care to prevent him from succumbing to his medical conditions. *Id.* Instead of housing Richardson in a medical unit where he could have been properly monitored, Richardson was placed in the general population. *Id.*

On November 16, 2021, Richardson was hospitalized at Ochsner-LSU Monroe, with a deteriorating physical and mental condition that was open and obvious. *Id.*, ¶ 26. Records documented a 30-pound weight loss over the preceding year, as well as onset of sepsis, hypokalemia, hypoglycemia, and leukocytosis. *Id.* "[Richardson] reported feeling unwell since being diagnosed with diabetes a few months prior." *Id.*

Three days later, on November 19, 2021, Richardson was transferred to LSU-Shreveport where he exhibited multiple episodes of near fainting that had been present for weeks, very low

---

[4] The parties refer to Richland Medical Center, but there is no such place. The undersigned takes judicial notice that there are two hospitals or medical centers in Richland Parish, Louisiana: Richardson Medical Center and Delhi Hospital. *See* FED. R. EVID. 201(b) (stating that a court may take judicial notice on its own at any state of the proceeding of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be questioned"). It appears more likely that Plaintiffs transposed the name of the detention center with the name of the medical center.

potassium, and a bacterial infection (likely caused by improper insulin doses). *Id.*, ¶ 28. He was stabilized and discharged from hospital on November 21, 2021. *Id.*

Upon his release, Richardson apparently was returned to the RPDC, where he remained until an unspecified date in December 2021, when he was found non-responsive in his bed and rushed to the hospital. *Id.*, ¶ 29. On December 17, 2021, Richardson was admitted to Ochsner LSU Shreveport Medical Center Emergency Department where he was nonresponsive, with extremely low blood sugar. *Id.* Richardson weighed only 108 pounds upon readmission, even though he was over 6 feet tall. *Id.*, ¶ 30. He had "decerebrate posturing on arrival; eyes deviated to the right, pupils minimally reactive." *Id.* The hospital placed him on "comfort measures" from December 25, 2021, until his death on December 30, 2021. *Id.*

The Thomases contend that from the time of Richardson's initial hospital stay, Sheriff Gilley and Warden Weatherly knew or should have known that Richardson was suffering from a life-threatening condition. *Id.*, ¶ 23. The Thomases assert that Gilley and Weatherly willfully ignored Richardson's condition by failing to:

(1)     place him in a medical unit where he could receive 24-hour care, or, alternatively, transfer him to a facility that could provide the requisite level of care;

(2)     provide him with a continuous glucose monitor and reader;

(3)     consult a dietician to regulate his diet; and

(4)     administer adequate blood sugar level testing at least five times per day.

*Id.*

The Thomases allege that, throughout his incarceration at the RPDC, Richardson required repeated hospitalizations[5] stemming from the inadequate management of his diabetic condition.

---

[5] Albeit, they identified only one hospitalization, including a transfer to another hospital, before

*Id.*, ¶ 24.  When Richardson's blood sugar level was low, he was instructed to eat some sweets, if he had some in his room.  *Id*.  However, he did not receive instruction regarding how many sweets to ingest or how frequently.  *Id*.  In addition, there was no medical follow-up.  *Id*.  In short, the nurses and medical staff failed to monitor Richardson's condition in a manner consistent with justice and human rights.  *Id*.

The Thomases attribute Richardson's death to Defendants' failure to properly screen, classify, and evaluate "detainees" for chronic health risk, and to intervene to prevent deaths by "detainees," like Richardson.  *Id.*, ¶ 31.  The Thomases contend that unspecified policies and practices were implemented by Defendants, or they were so "pervasive" that Gilley, Weatherly, and the Does must have been aware of them.  *Id*.

Furthermore, Gilley and Weatherly failed to adequately staff and train employees responsible for providing adequate medical and mental health care at the RPDC.  *Id.*, ¶ 31.  As a result of unspecified policies and practices permitted by Gilley and Weatherly, the RPDC staff were not adequately trained or supervised, which resulted in deliberate indifference to prisoners' serious medical needs, and, ultimately, Richardson's death.  *Id.*, ¶¶ 33-34.

Comekia Thomas complained to the RPDC medical director, Kendra Vaughn, about the insufficient care and treatment her father was receiving for his chronic illness.  *Id.*, ¶ 36.  Ms. Thomas also spoke with the medical staff on several occasions and even requested an audience with Sheriff Gilley and Warden Weatherly regarding her father's medical care.  *Id.*, ¶ 38.  Only after Richardson's condition had deteriorated "to such a degree," did Gilley and Weatherly begin to seek an early release for Richardson.  *Id*.  By then, however, it was too late.  *Id*.

---

Richardson's final admission in December 2021.

Other family members "reached out" to Sheriff Gilley and Warden Weatherly to advise them that Richardson needed to be transferred to another facility for medical care. *Id.*, ¶ 37. Furthermore, Richardson's siblings voiced their concerns with unspecified prison officials and medical staff. *Id.*

The Thomases speculate that Richardson was "overdosing" on insulin, which could have been prevented with a glucose monitor. *Id.*, ¶¶ 42-43. Richardson's decerebrate posturing, which was documented at the time of his hospital admission in December, would have been evident to anyone at the RPDC. *Id.*, ¶¶ 44-45.

The RPDC failed to craft a diabetic diet specific to Richardson, and, instead, simply told him to eat double portions. *Id.*, ¶ 47. There also is no record that any RPDC personnel provided Richardson with any form of patient education regarding his condition. *Id.*

The Thomases emphasize that in 2021 alone, three other inmates died at the RPDC as a result of medical causes. *Id.*, ¶¶ 48-49.

The Thomases allege that Defendants conspired to violate Richardson's constitutional rights as protected by the Eighth and Fourteenth Amendments to the U.S. Constitution. *Id.*, ¶ 56. Furthermore, Sheriff Gilley and Warden Weatherly knew about Richardson's condition, but exhibited deliberate indifference towards Richardson's plight. *Id.*, ¶ 61. Defendants failed to supervise subordinates and failed to refer prisoners to mental health professionals or to monitor prisoners who reported suicidal ideation or showed signs of mental health crisis. *Id.*, ¶ 63.

The Thomases seek relief under 42 U.S.C. § 1983 for Defendants' violations of Richardson's constitutional rights as protected by the Eighth and Fourteenth Amendments to the U.S. Constitution. They also set forth various state law tort claims against Gilley, Weatherly,

and the J. Doe Defendants.  Finally, they pray for compensatory and punitive damages, costs, plus reasonable attorney's fees under three statutes:  42 U.S.C. § 1988; the Americans with Disabilities Act, 42 U.S.C. § 12205; and the Rehabilitation Act, 29 U.S.C. § 794a(b).  (FARC, Prayer).

## Analysis

Gilley and Weatherly's motion to dismiss does not address the Thomases' state law claims.  Accordingly, the court's analysis is limited to the Thomases' federal law claims, and, particularly their § 1983 claims.

A § 1983 suit may be brought against a party in that party's official or individual/personal capacity, as well as against a government entity.  *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).  A § 1983 *personal-capacity* suit seeks to impose liability on a "government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) (emphasis added).

On the other hand, a suit against a party in that party's *official-capacity* is generally "another way of pleading an action against an entity of which an officer is an agent."  *Goodman v. Harris Cty.*, 571 F.3d at 395 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, n.55 (1978).  Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government entity—and not against the official personally.  *Id.*  This type of claim also is known as a *Monell* claim.  *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 307 (5th Cir. 2023).

In this case, the Thomases sued Sheriff Gilley, in both his "individual" and "official" capacities under 42 U.S.C. § 1983, whereas they sued Warden Weatherly in his "individual"

capacity only.  The court will address the claims, in turn.

## I.    Individual Liability under § 1983

### a)    Law

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein.  *Id.*  "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983."  *Id.*  (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law."  *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted).  Accordingly, a claim against a state actor in his personal-capacity need not be attributed to a governmental "policy or custom." *Hafer, supra*.

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  The qualified immunity doctrine balances two often conflicting interests:  "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.  As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.  However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).  Plaintiff's burden is two-pronged.  *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).  First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.  *Id*.  "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."  *Id*.  (quoted source and internal quotation marks omitted).  The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  *Collier v. Montgomery*, 569 F.3d 214,

11

217 (5ᵗʰ Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (quoted source omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id*. (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan, supra* (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own. *See Joseph, supra*.

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold, supra* (citation omitted). Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity

defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Arnold, supra* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").[6]

Ordinarily, "qualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir. 2018) (citation omitted); *see also Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007) (overruling district court's decision to consider officers' conduct collectively, merely because they acted in unison). However, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions." *Meadours*, 483 F.3d at 422 n.3.

The Thomases allege that Defendants violated Richardson's rights under the Eighth and Fourteenth Amendments.[7] "A prison official violates the Eighth Amendment's prohibition

---

[6] In their brief, the Thomases suggest that Sheriff Gilley and Warden Weatherly are requiring them to provide proof of their § 1983 claims at the pleading stage. To the contrary, Gilley and Weatherly are holding the Thomases to their pleading burden, which, in the wake of *Twombly* and *Iqbal*, requires *factual*, not conclusory, allegations, not only to support the elements of their claims, but also to defeat defendants' qualified immunity defense. It is manifest that "a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without *any* discovery." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). This is consistent with the maxim that qualified immunity must be adjudicated at the earliest possible opportunity. *Id*.

The court acknowledges that, in many cases, it now will prove difficult for plaintiffs to state a claim for relief under § 1983 against supervisory officials and/or a *Monell* claim. Fortunately for the Thomases, they also asserted viable state law claims against Gilley and Weatherly, which should provide a key for opening the door to discovery, following remand. *See* discussion, *infra*.

[7] In the FARC, the Thomases refer to Richardson as a detainee. If Richardson was a convicted prisoner, then his rights derive from the Eighth Amendment. *Baughman v. Hickman*, 935 F.3d

against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) (citations omitted). Thus, to establish liability for inadequate medical care under the Eighth Amendment, an inmate must adduce facts which "clearly evince" a serious medical need and the prison official's deliberate indifference to it. *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Furthermore, "[t]o succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted); *see also Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018)

---

302, 306 (5th Cir. 2019) ("The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees") (citation omitted). However, the Eighth Amendment is made applicable to the States through the Fourteenth Amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419; 128 S.Ct. 2641, 2649 (2008), *as modified* (Oct. 1, 2008), *opinion modified on denial of reh'g*, 554 U.S. 945; 129 S.Ct. 1 (2008). Furthermore, the Fifth Circuit's Fourteenth Amendment case law concerning pretrial detainees is based on the same Supreme Court's Eighth Amendment precedent pertaining to prisoners. *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). Ultimately, then, "there is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

(applying *Farmer* to a denial of medical care claim). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). "[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Thus, mere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment, negligence, or medical malpractice." *Delaughter v. Woodall*, 909 F.3d at 136 (citations omitted). Moreover, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).

In short, "[d]eliberate indifference is an extremely high standard to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Domino, supra* (quoting *Farmer, supra*) ("[T]he decision whether to provide additional treatment 'is a

classic example of a matter for medical judgment.'").

The court emphasizes that supervisory officials are not liable under § 1983 for the actions of subordinates under any theory of vicarious liability. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (citation omitted); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").  Rather, individual liability against a supervisor under § 1983 obtains only "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)); *see also Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).

In the absence of the supervisor's personal participation in the events at issue, a § 1983 plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa, supra*; *Smith v. Packnett*, 339 Fed. App'x. 389, 393 (5th Cir. 2009) (citation omitted).  Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id*. (citation and internal quotation marks omitted).  Failure to adopt a policy may constitute deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (citation omitted).

The Fifth Circuit has emphasized that,

deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  To

16

> establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless choose[s] to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Porter*, *supra* (internal quotation marks and citations omitted); *Mesa, supra* (deliberate indifference generally requires more than a single instance of lack of training or supervision that results in a constitutional violation).

"[U]nder certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848–49 (5th Cir. 2009) (quoting *Brown v. Bryan Co., Okla.,* 219 F.3d 450, 458 (5th Cir. 2000)). To rely on this exception, however, "a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 397 F.3d 287, 295–96 (5th Cir. 2005) (citing *Brown v. Bryan County*, 219 F.3d at 461). Nonetheless, the "single incident" exception is limited to those cases where the government actor received "no training whatsoever," rather than merely a failure to provide training in a particular area. *See Pena, supra* (distinguishing *Brown, supra*).

b)    <u>Discussion</u>

Gilley and Weatherly argue that the Thomases do not allege *facts* to show either that they ever interacted with Richardson or that they had actual knowledge of his serious medical

17

condition, as necessary to establish their deliberate indifference.  They further argue that the Thomases' allegations do not suffice to show that Richardson received constitutionally insufficient medical care.  Because the undersigned agrees with Gilley and Weatherly's primary argument, the court does not reach their latter contention.

In their FARC, the Thomases include a generous dose of allegations that RPDC personnel were made aware of Richardson's inadequate medical care.  However, they do not allege *facts* to show that Sheriff Gilley or Warden Weatherly were personally aware of Richardson's ill health and the alleged mismanagement of his diabetic condition.  While the Thomases contend that Richardson's deteriorating condition was "open and obvious," *see* FARC, ¶ 26, they do not allege that Gilley and/or Weatherly personally observed his condition.  The Thomases also allege that Richardson did not receive a proper treatment plan.  *Id*., ¶ 35.  Again, however, they do not include facts to show that Gilley and/or Weatherly were involved with the improper plan or that they even were aware of it.  *Id*.[8]

The court acknowledges that the FARC includes an allegation that family members "reached out to the Sheriff and the Warden to explicitly tell them that Mr. Richardson needed to be transferred to another facility for medical care."  *Id*., ¶ 37.  However, as noted by Gilley and Weatherly, the FARC pointedly falls short of saying that family members actually succeeded in discussing the matter with Gilley and Weatherly.  Instead, the FARC details various family members who spoke with nondescript "prison officials" and "medical staff," and even the RPDC

---

[8] The FARC includes excerpts from the Position Statement on Diabetes Management in Detention Facilities ("PSDMDF") issued by the American Diabetes Association in October 2021.  (FARC, ¶¶ 6, et seq.).  However, the FARC does not allege facts to suggest that Sheriff Gilley and Warden Weatherly personally were aware of the recommendations set forth in the PSDMDF, which only issued in October 2021.

18

medical director.  *Id.*, ¶¶ 36-38.

One factual allegation by the Thomases that tends to suggest Gilley and Weatherly obtained knowledge of Richardson's condition is that, once Richardson's condition had "deteriorated to such a degree," Gilley and Weatherly finally sought an early release for Richardson.  *Id.*, ¶ 38.  However, the allegation also serves to confirm that Gilley and Weatherly took steps to alleviate Richardson's plight once they finally became aware of it.  In any event, the Thomases concede that, by that time, it was too late.  *Id.*, ¶ 38.

The Thomases also do not state a claim against Gilley or Weatherly for failure to train or supervise their subordinates.  Because the FARC does not include facts to show that Gilley and Weatherly were personally aware of the events at issue in this case, the Thomases must establish their deliberate indifference pursuant to a pattern of similar constitutional violations committed by untrained employees.  In an effort to do so, the Thomases allege that in 2021, three other inmates died at the RPDC:   one from respiratory failure, one from a pulmonary embolism, and one from myocarditis.  (FARC, ¶ 48).

It is manifest, however, that the pattern of examples must have "similarity" and "specificity," with "sufficiently numerous prior incidents."  *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (citations omitted); *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017).  Here, there are no facts to suggest that the examples identified by the Thomases  pertained to inadequate medical care for diabetes, or that the deaths even were caused by inadequate medical care at all.  In addition, the "single incident" exception remains inapplicable because the Thomases do not allege that the RPDC staff received

19

"no training whatsoever."[9]

The Thomases cite a host of mostly district court decisions in their brief. For example, they assert that their allegations are essentially the same as those in *Edmond v. Lafayette Consolidated Government*, which Magistrate Judge Hanna found sufficed to state a claim for relief. *See Edmond v. Lafayette Consol. Gov't*, Civ. Action No. 16-0045, 2016 WL 4277170, at *4 (W.D. La. July 11, 2016), *R&R adopted,* 2016 WL 4292551 (W.D. La. Aug. 15, 2016). In *Edmond*, however, the plaintiff alleged that the police chief personally investigated the specific actions of the officer who caused plaintiff's injuries but then declined to discipline or further train that officer. *Id*. No such allegations appear here. Furthermore, there is no indication that the police chief in *Edmond* invoked qualified immunity in his Rule 12(b)(6) motion. *Id*.[10]

The Thomases also cite *Williamson v. Garber*, where the district court rejected, in part, a report and recommendation by the magistrate judge insofar as it denied plaintiff's claims for deliberate indifference related to failure to receive blood thinner medication, understaffing, training or supervision against the sheriff, but permitted plaintiff leave to file an amended complaint to support these claims. *Williamson v. Garber*, Civ. Action No. 19-01212, 2020 WL 1243517 (W.D. La. Mar. 13, 2020). In the end, however, when plaintiff's amended complaint still failed to flesh out these claims with supporting facts, the court dismissed all of the remaining

---

[9] In a recent case, the Fifth Circuit held that plaintiffs' allegations did not suffice to show that defendant acted with deliberate indifference where plaintiffs alleged that he "was familiar with [a] pattern of illegal and unconstitutional conduct as described in this Complaint," but failed to set forth any facts to support that conclusory assertion. *Tuttle v. Todd*, No. 22-20319, 2023 WL 4884853, at *3 (5th Cir. Aug. 1, 2023).

[10] In *Edmond*, Judge Hicks ultimately found that plaintiffs had no viable § 1983 or state law tort claims at all and dismissed them on summary judgment. *Edmond on Behalf of M.B. v. Lafayette Consol. Gov't*, Civ. Action No. 16-0045, 2018 WL 344154 (W.D. La. Jan. 9, 2018).

claims against the sheriff. *Williamson v. Garber*, Civ. Action No. 19-01212, 2020 WL 3865288 (W.D. La. June 10, 2020), *R&R adopted,* 2020 WL 3865258 (W.D. La. July 8, 2020).

The Thomases also rely on *Thompson v. Ackal*, where the court found that plaintiff had stated a claim for subjective indifference against the doctor who had refilled the detainee's prescription medication, but never examined the detainee, obtained his medical records, or spoke with him about his condition. *Thompson v. Ackal*, Civ. Action No. 15-02288, 2016 WL 1394352 (W.D. La. Mar. 9, 2016), *R&R adopted,* 2016 WL 1391047 (W.D. La. Apr. 6, 2016). Here, however, there are no *factual* allegations that Gilley or Weatherly were personally involved in Richardson's medical care or that they knew or endorsed his allegedly inadequate treatment.

The Thomases further cite *Carter v. Frith* where Judge Drell denied summary judgment filed by the dormitory paramedic who purportedly failed to provide her with adequate medical care. *Carter v. Frith*, Civ. Action No. 16-0611, 2018 WL 707537 (W.D. La. Feb. 1, 2018). Again, however, the FARC does not contain factual allegations to suggest that Gilley or Weatherly personally were involved in Richardson's medical care or that they knew or endorsed his allegedly inadequate treatment.

The Thomases also cite *Fielder v. Bosshard* where the Fifth Circuit upheld a jury verdict against a jailer, deputies, and the sheriff for conscious or callous indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). In *Fielder*, as in the other cases cited by the Thomases,[11] the defendants,

---

[11] The Thomases cite two Fifth Circuit decisions that upheld claims against prison nurses for refusal to provide appropriate medical care. *See Easter v. Powell*, 467 F.3d 459 (5th Cir. 2006) and *Lawson v. Dallas County*, 286 F.3d 257 (5th Cir. 2002). Unlike a sheriff and warden, however, the nurses were directly involved with the inmate's medical care.

The Thomases also rely on a bench trial decision rendered by Judge Foote where she

including the sheriff, were personally aware of the plaintiff's poor health, but were consciously indifferent to his plight. *Id*. Those circumstances are not present here.

In sum, the Thomases have not alleged requisite facts to support a § 1983 claim against Gilley and Weatherly in their individual capacities.[12] *See Reed v. Louisiana Dep't of Corr.*, Civ. Action No. 17-1382, 2023 WL 4855022, at *6 (W.D. La. July 28, 2023) (Doughty, C.J.) (other than conclusory assertions, plaintiffs offer no evidence showing that the former warden was aware of the decedent's condition). Even if the Thomases had demonstrated a plausible constitutional claim against Gilley and Weatherly for inadequate medical care under the Eighth Amendment, they have not shown, via controlling or robust consensus of persuasive authority, that any reasonable officer in Gilley or Weatherly's position would have known that his conduct violated clearly established law at the time of the incident.[13]

---

found a nurse and guard liable for their direct role in failing to treat the plaintiff's appendicitis. *Rodrigue v. Morehouse Det. Ctr.*, Civ. Action No. 09-985, 2012 WL 4483438 (W.D. La. Sept. 28, 2012), *aff'd sub nom. Rodrigue v. Grayson*, 557 Fed. App'x. 341 (5th Cir. 2014). However, the Thomases overlook that part of Judge Foote's decision where she found no supervisory liability on behalf of the sheriff, the warden, and the assistant warden because the plaintiff had not alleged that they affirmatively participated in the acts that caused the constitutional violation. *Id*.

The Thomases also cite other district court decisions from this district and beyond. *See* Opp. Memo., pgs. 15-16, fn.4-5. However, to the extent that the cases are not otherwise distinguishable, they remain non-binding.

[12] Insofar as the Thomases intended to rely on unsupported allegations of conspiracy to support their claims against Gilley and Weatherly, it is manifest that such bald allegations do not suffice to state a claim. *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (citations omitted). Moreover, by failing to respond to Gilley and Weatherly's argument regarding this issue, the Thomases have waived or abandoned the conspiracy claim. *See Payton v. Town of Maringouin*, Civ. Action No. 18-0563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021), *aff'd*, 2022 WL 3097846 (5th Cir. Aug. 3, 2022) (citations omitted).

[13] In *Addington v. Wells*, the plaintiffs' father was an inmate with Type II diabetes, who used insulin and food to manage his blood sugar. *Addington v. Wells*, No. 22-30220, 2023 WL 2808466, at *1 (5th Cir. Apr. 6, 2023). Although the inmate ultimately succumbed to the disease

Accordingly, Gilley and Weatherly are entitled to qualified immunity and the dismissal, with prejudice, of the Thomases' § 1983 claims asserted against them in their individual capacities.

## II.    § 1983 Official Capacity Claim against Sheriff Gilley

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir. 2022) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior. Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

The official policy requirement may be met in various ways. An "official policy" means:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

---

while in custody, he received medical treatment in the days before his death and never made a specific request for medical treatment that was ignored by prison staff. *Id.* Accordingly, the Fifth Circuit held that the defendant was entitled to qualified immunity because plaintiffs failed to meet their burden of "placing 'beyond debate' the question of whether an officer acting under similar circumstances would have been on notice that he was violating clearly established law." *Id.*

2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).   The existence of a custom or policy may be shown by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).  "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citation and internal quotation marks omitted).[14]  Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to his own injury.  *Id.* (citation omitted).

It is manifest that,

to find a municipality liable for a policy based on a pattern, that pattern must have

---

[14] For example, an allegation that the underlying unconstitutional act represents "a persistent, widespread practice" by city employees that is "so common and well settled as to constitute a custom . . ." of the city does not contain any specific facts. *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

> occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees. A pattern requires similarity, specificity, and sufficiently numerous prior incidents.

*Davidson*, 848 F.3d at 396 (citations and internal quotation marks omitted). Ultimately, "isolated acts cannot establish the existence of a custom or practice." *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 752 (5th Cir. 2023) (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)). Rather, prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectional conduct is the expected, accepted practice." *Id*. (citation omitted).

Here, the Thomases do not allege facts to establish that anyone besides Richardson suffered inadequate diabetic care as required to show that Sheriff Gilley had an unconstitutional policy or practice. *See Thompson v. Hedrick*, 838 Fed. App'x. 121, 123 (5th Cir. 2021) (plaintiff did not plead facts to show that the complained-of policy had been applied in a widespread fashion or that it caused him to be denied medical care); *Peña, supra* (plaintiff must do more than describe the incident that gave rise to his injury); *Prince v. Curry*, 423 Fed. App'x. 447, 451 (5th Cir. 2011) (existence of one or two similarly situated incidents does not plausibly suggest the existence of an unconstitutional policy or custom); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted); *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 390 (5th Cir. 2023) (allegations that defendants continually ignored plaintiff's complaints about his medications, antibiotics, and condition of his foot did not suffice to establish that the county had a policy to that effect, as opposed to the isolated acts of the employees who interacted with plaintiff). Accordingly, the Thomases' allegations fall materially short of demonstrating a custom or practice that is so frequent and prevalent that Sheriff Gilley

25

must have been aware of and accepted the disputed conduct.

A failure to train or supervise claim also may be asserted as another type of *Monell* claim. *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021); *see Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) ("The standard applicable to a failure-to-train claim is the same as the standard for municipal liability."). The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.* (citation omitted). A failure-to-train claim requires plaintiff to "prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson, supra* (citing *Peña,* 879 F.3d at 623)); *Armstrong, supra*.

As with a failure to train claim asserted in the individual capacity context, deliberate indifference normally entails a "pattern of similar constitutional violations by untrained employees." *Id.* (citation omitted). But even when evidence of a pattern is missing, "it is still possible to establish deliberate indifference through the single-incident exception." *Id.* (citation omitted). The single-incident exception for a failure-to-train claim, however, is "extremely narrow." *Id.* (citing *Valle, supra*). To succeed, the "plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* Thus, for a violation to be "highly predictable," the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Hutcheson, supra* (citing *Littell v. Hous.*

26

*Indep. Sch. Dist.,* 894 F.3d 616, 624-25 (5th Cir. 2018). Ultimately, the single-incident

exception *in the failure to train* context, "is generally reserved for those cases in which the

government actor was provided no training whatsoever." *Id*. (citing *Peña*, 879 F.3d at 624).

Here, the Thomases did not allege facts to show that Gilley had a pattern of *similar*

constitutional violations by untrained employees or that any specific government actor was

provided no training whatsoever and that the training omission caused the constitutional

deprivations. *See* discussion*, supra; Hutcheson, supra*; *Peña, supra*.

Instead, the Thomases argue that the unconstitutional actions by Gilley in his individual

capacity also support liability against him in his official capacity because, as sheriff, Gilley is the

final policymaker. "It is well-established that a single unconstitutional action by a municipal

actor may give rise to municipal liability if that actor is a final policymaker." *Bolton v. City of

Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus,* 419 F.3d 348, 352

(5th Cir. 2005); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480; 106 S.Ct. 1292, 1298

(1986). Furthermore, there is no question that a parish sheriff is a final policymaker. *Burge v.

St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir.2003); *Stuart v. Russell, et al.*, Civ. Action No.

21-01231, 2021 WL 4820244, at *4 (W.D. La. Oct. 15, 2021) (Doughty, J.); *Lester v. Caddo

Par.*, Civ. Action No. 15-2008, 2017 WL 6610329, at *6 (W.D. La. Dec. 27, 2017) (citing *Craig

v. St. Martin Parish Sheriff*, 861 F. Supp. 1290, 1300 (W.D. La. 1994) and La. Const. Art. 5, §

27).

Here, however, the court has not endorsed any cognizable § 1983 individual capacity

claim against Gilley. *See* discussion, *supra*. Accordingly, there is no basis to impute these non-

viable claims to Gilley in his official capacity.

Finally, the Thomases also endeavor to state a claim for understaffing. To do so, they must plead that "there was a policy at the jail, promulgated or implemented by the policy making official, of deliberate indifference to the risk of under-staffing and that this policy caused his injury." *Williamson, supra* (citing *Payton v. CEO, Corrections Corp. of America*, 2015 WL 52104, at *3 (W.D. La. 2015)). However, allegations of understaffing, without more, is not proof of official policy. *Id.* (citation omitted). Rather, a plaintiff must show that more complete staffing was possible and that it was the deliberate intent of the policymaker not to adequately staff the jail such as to show his gross indifference to the medical needs of the inmates. *Id*.

Here, as with their other § 1983 claims, the Thomases' conclusory allegations of an unspecified policy and deliberate indifference fall short of the requisite standard to state a claim for relief. *See Williamson, supra*; *Payton v. CEO, Corr. Corp. of Am.*, Civ. Action No. 14-0959, 2015 WL 52104, at *3 (W.D. La. Jan. 2, 2015) (plaintiff presented only a conclusory allegation of under-staffing).

In sum, the Thomases fail to state a claim for municipal or *Monell* liability under § 1983 against Sheriff Gilley, and, consequently, the claim is subject to dismissal, with prejudice.

## III.    § 1983 Claims against J. Does #s 1-51

"A civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned." *Thomas v. State*, 294 F.Supp.3d 576, 619 (N.D. Tex. 2018), *R&R adopted,* 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) (citing *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 390 n.2, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v.*

28

*Doe*, 260 Fed. App'x. 717, 719 (5th Cir. 2007) (citation omitted).

In this case, the Thomases do not allege any facts to support a § 1983 claim against any specific J. Doe defendant.  Rather, they lump 25 unknown defendants into one category of unknown RPDC healthcare professionals and then add a separate category of 26 unknown employees of Gilley, Weatherly, and/or the Louisiana Department of Public Safety & Corrections.  However, the Thomases allege no facts to show that any specific defendant, whose identity otherwise remains unknown, violated Richardson's constitutional right to adequate medical care.  *See* discussion, *supra*.  Under these circumstances, dismissal of the Thomases' § 1983 claims against  J. Doe #s 1-51 is required.  *See Thomas, supra*; *Bohannan v. Doe*, 527 Fed. App'x. 283, 292 (5th Cir. 2013) (affirming dismissal of claims against Troopers Doe I and II because plaintiff did not allege sufficient facts to demonstrate deliberate indifference to his medical needs by these defendants); *Williams v. Anderson*, Civ. Action No. 17-0179, 2019 WL 138744, at *6 (N.D. Miss. Jan. 8, 2019) (plaintiff did not allege facts to show that anyone intended to cause harm, and thus, she failed to state a § 1983 claim against any of the John Doe defendants).

Accordingly, it is recommended that the court *sua sponte* dismiss, with prejudice, the Thomases' § 1983 claims against J. Does #1-51.[15]

### Attorneys' Fees Under Federal Law

---

[15]  The court possesses the inherent authority to dismiss a party *sua sponte*.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties); *Thomas v. Texas Dept. of Family and Protective Services*, 427 Fed. App'x. 309 (5th Cir. 2011) (sua sponte dismissal on 11th Amendment grounds).

29

The Thomases also seek reasonable attorney's fees under three federal statutes: 42 U.S.C. § 1988; the Americans with Disabilities Act, 42 U.S.C. § 12205; and the Rehabilitation Act, 29 U.S.C. § 794a(b). (FARC, Prayer). All three statutes presuppose a prevailing party. Here, however, the undersigned has recommended dismissal of the Thomases' § 1983 claims, and there is no indication that they are seeking substantive relief under the Americans with Disabilities Act and/or the Rehabilitation Act. Accordingly, the Thomases cannot be prevailing parties under any of these statutes, and, therefore, do not assert plausible claims for attorneys' fees under the cited federal statutes. In short, these claims are subject to dismissal, with prejudice.

**Amendment**

At the conclusion of their opposition brief, the Thomases alternatively request further leave to amend in the event that the court determines that their allegations are inadequate. Certainly, a court is required to freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Here, however, the Thomases already have amended their complaint once. Moreover, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Accordingly, the Thomases' alternative request for leave to amend to set forth additional, unspecified facts does not comply with Rule 15 and is DENIED.[16]

---

[16] Because the recommended disposition of the instant motion disposes of fewer than all claims

30

Accordingly, the Thomases' alternative request for leave to file an amended complaint is DENIED.

## State Law Claims

Gilley and Weatherly urge the court to remand the Thomases' remaining state law claims to state court. Indeed, when, as recommended here, all claims which conferred original jurisdiction are dismissed, the court may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3). In fact, this is the general rule. *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).

The Thomases filed this suit originally in state court, and they have a legitimate interest in preserving the state court forum that they chose originally. It also is fair to have Louisiana state law claims heard and resolved in Louisiana state court. Accordingly, the twin interests of comity and efficiency dictate that the remaining state law claims be remanded. 28 U.S.C. § 1367(c)(3); *Williams v. Ouachita Par. Sheriff's Dep't*, Civ. Action No. 17-0060, 2017 WL 4401891 (W.D. La. Aug. 28, 2017), *R&R adopted,* 2017 WL 4399277 (W.D. La. Oct. 3, 2017) (declining to exercise supplemental jurisdiction over potentially untimely state law claims after dismissal of federal law claims).

## Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a

---

and parties, it is not a final judgment and, therefore, remains subject to revision at any time before conclusion of the case. FED. R. CIV. P. 54(b). Following an opportunity for discovery, the Thomases may uncover sufficient facts to support a § 1983 claim against these or other specific defendants. If so, then they may amend their petition to add those claims and parties, whereupon defendant(s) may re-remove the case to federal court. *See* discussion, *infra*.

claim upon which relief can be granted [doc. # 7] filed by Defendants, Sheriff Gary Gilley and Warden Joel Weatherly, be GRANTED, and that Plaintiffs' federal law claims against all Defendants be DISMISSED, with prejudice.  FED. R. CIV. P. 12(b)(6).

IT IS FURTHER RECOMMENDED that Plaintiffs' remaining state law claims be REMANDED to the Fifth Judicial District Court for the Parish of Richland, State of Louisiana, whence they were removed.  28 U.S.C. § 1367(c)(3).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 20th day of September, 2023.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE